## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SALLY J. SMITH,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**WAL-MART STORES, INC.,** )<br>**WAYFAIR, INC., MEREDITH** )<br>**CORPORATION dba BETTER** )<br>**HOMES & GARDENS,** )<br>**AMAZON.COM, INC., HAYNEEDLE,** )<br>**INC., JET.COM, INC., HI-LINE GIFT,** )<br>**LTD., PESCHE'S FAMILY** )<br>**FLOWERS, INC. dba MY FAIRY** )<br>**GARDENS, IDYLLWILD GARDENS** )<br>**dba FAIRY HOMES AND GARDENS,** )<br>**ZULILY, LLC, OAK VALLEY** )<br>**DECOR, EXHART** )<br>**ENVIRONMENTAL SYSTEMS, INC.,** )<br>**GIFTCRAFT, LTD., GIFTCRAFT** )<br>**INC., THE GERSON COMPANY,** )<br>**OVERSTOCK.COM, INC.,** )<br>)<br>**Defendants.** | Civil Action No. __8:19-CV-__1481 (BKS/DJS)<br><br>**COMPLAINT FOR COPYRIGHT**<br>**INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, by and through counsel, alleges as follows:

### NATURE OF THE CLAIM

1.      This is a copyright infringement action seeking damages and injunctive relief against various defendants who have willfully manufactured and sold fairy houses that infringe upon Sally Smith's registered copyrights.

2.      For over a decade, Sally Smith has been creating environmental art sculptures set in and making use of materials from the natural world.  She has gained particular renown for her whimsical, intricately constructed fairy houses, photographs of which have been published on the internet and in calendars and compilation books distributed around the world.

3.     In the past few years, as fairy houses have become a popular feature in garden décor, a number of opportunistic manufacturers and retailers have copied Ms. Smith's original creative works, producing mass-market fairy houses and selling them over the internet and, on information and belief, in retail stores throughout the United States.

4.     This brazen theft of Ms. Smith's original works infringes on her rights under the Copyright Act of 1976 and, unless immediately enjoined, will continue to cause irreparable harm to Ms. Smith; Defendants cannot be permitted to continue to exploit Ms. Smith's creative works without authorization for their own gain. Defendants' conduct should be immediately halted and Ms. Smith should be compensated for Defendants' acts of willful infringement.

## **PARTIES**

5.     Plaintiff Sally J. Smith is an artist who lives and works in Westport, New York.

6.     Defendant Wal-Mart Stores, Inc. ("Walmart") is a Delaware corporation with a principal place of business in Bentonville, Arkansas that does business under the name Walmart, including through the website www.walmart.com.  Walmart operates retail stores around the country as well as an online marketplace.  Walmart's online marketplace services are integrated with its own online shopping option for products sold by Walmart.  Walmart does not offer fulfillment services for its online marketplace but allows third-party sellers to list their products among those sold and fulfilled by Walmart.  Consumers

purchasing from a third-party seller on Walmart's online marketplace are charged by Walmart, who then deposits the payment into the seller's account, minus a "referral fee."

7.      Defendant Wayfair, Inc. ("Wayfair") is a Delaware corporation with a principal place of business in Boston, Massachusetts that does business under the name Wayfair, primarily selling through the website www.wayfair.com.

8.      Defendant Meredith Corporation ("BHG") is an Iowa corporation with a principal place of business in Des Moines, Iowa that does business under the name Better Homes & Gardens, including through the website www.bhg.com.

9.      Defendant Amazon.com, Inc. is a Delaware corporation with a principal place of business in Seattle, Washington ("Amazon") that does business under the name Amazon.com, primarily through the website www.amazon.com. Amazon operates an online marketplace where it provides services for consumers and retailers in a number of countries.  Through its online marketplace Amazon sells goods directly to consumers, advertising them as "sold and shipped by Amazon."  In addition to being a direct seller, Amazon offers a number of support services to third-party sellers.  Amazon provides a virtual storefront, advertising, warehousing, and fulfillment services to third-party sellers.  In providing these fulfillment services, Amazon receives and stores shipments of the products from third-party sellers; upon purchase of a third-party product through the virtual storefront provided by Amazon, Amazon's workers will select the individual products to be shipped, prepare them for shipping, and ship them.  Consumers'

credit cards are billed to Amazon and, upon receiving money from the consumer, Amazon deposits the funds in the third-party seller's account less the cost of using Amazon's service.

10.     Defendant Hayneedle, Inc. ("Hayneedle") is a Delaware corporation with a principal place of business in Omaha, Nebraska that does business under the name Hayneedle, including through the website www.hayneedle.com.

11.     Defendant Jet.com, Inc. ("Jet.com") is a Delaware corporation with a principal place of business in Hoboken, New Jersey that does business under the name Jet.com, including through the website www.jet.com.

12.     Defendant Hi-Line Gift, Ltd. ("Hi-Line") is a Canadian corporation with a principal place of business in Mississauga, Ontario that operates a warehouse in Buffalo, NY and does business under the name Hi-Line Gift, including through the website www.hilinegift.com.

13.     Defendant Pesche's Family Flowers, Inc. ("My Fairy Gardens") is an Illinois corporation with a principal place of business in Des Plaines, Illinois that does business under the name My Fairy Gardens, including through the website www.myfairygardens.com.

14.     Defendant Idyllwild Gardens ("Fairy Homes and Gardens") is a Missouri business with a principal place of business in Savannah, MO that does business under the name Fairy Homes and Gardens, including through the website https://www.fairyhomesandgardens.com/.

15.     Defendant Zulily, LLC ("Zulily") is a Limited Liability Company with a

principal place of business in Seattle, Washington that does business under the name Zulily, including through the website www.zulily.com.

16.    On information and belief, Defendant Oak Valley Decor ("Oak Valley") is a Canadian corporation with a principal place of business in Mississauga, Ontario that does business under the name Oak Valley Décor, including through the website www.oakvalleydecor.com.

17.    Defendant Exhart Environmental Systems, Inc. ("Exhart") is a California corporation with a principal place of business in Chatsworth, California that does business under the name Exhart, including through the website www.exhart.com.

18.    Defendant The Gerson Company ("Gerson") is a Missouri corporation with a principal place of business in Olathe, Kansas that does business under the name The Gerson Companies, including through the website www.gersoncompany.com.

19.    Defendant Giftcraft Ltd. is a Canadian corporation with a principal place of business in Ontario, Canada that does business under the name Giftcraft.

20.    Defendant Giftcraft Inc. (together, with Giftcraft Ltd., "Giftcraft"), is a New York corporation with a principal place of business in Williamsville, New York that does business under the name Giftcraft.

21.    Defendant Overstock.com, Inc. ("Overstock") is a Delaware corporation with a principal place of business in Midvale, Utah that does business under the name Overstock.com, primarily through its website.

## JURISDICTION AND VENUE

22.     This is an action for copyright infringement arising under the

Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq.  The Court has subject

matter jurisdiction under 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338(a).

23.     Defendants are subject to personal jurisdiction because, on information

and belief, Defendants are doing business in the State of New York, and acts of

infringement complained of herein have occurred in the State of New York.

24.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400

because Defendants and their agents do business and may be found here and are

subject to personal jurisdiction here.

## FACTS

25.     For many decades, Plaintiff Sally Smith made her living as a

professional artist from her studio in the Adirondack Mountains, first as a

watercolor painter and more recently—since 2006—as the creator of unique

environmental art sculptures.

26.     Ms. Smith has become well known for her intricately detailed fairy

houses, constructed incorporating natural materials and documented in

photographs staged in natural settings.

27.     Each fairy house design and construction is the result of Ms. Smith's

artistic skill and years of experience working with the natural elements and

building fairy houses.  A single house with its carefully selected elements can take

Ms. Smith days to create.

28.     Ms. Smith's fairy houses have received publicity due to their unique and whimsical style, and are featured in numerous books and articles.  Ms. Smith's use of natural materials and unique designs has also made her houses the focus of numerous television specials.

29.     Ms. Smith has promoted her products on her own through the creation of her own videos available on DVD and YouTube.

30.     Photographs of Ms. Smith's fairy house sculptures have been published in a book by Ms. Smith, on her website (sallyjsmithart.com, previously greenspiritsarts.blogspot.com) since 2007, and as part of calendars, among other places.

31.     Ms. Smith's calendars have been in production since 2010 and feature one of her unique fairy houses each month.  These calendars are sold on Amazon and are best sellers.

32.     Ms. Smith's book, Fairy Houses, published on January 1, 2017, compiles photographs of a number of her fairy house sculptures and describes the techniques used to construct them (the "Smith Book").  Ms. Smith secured copyright registration with the U.S. Copyright Office for the Smith Book on January 31, 2017, Registration No. TX0008502263, as a compilation of text and photographs.

33.     The Smith Book was featured in and received excellent reviews from Better Homes and Gardens, Watertown Daily News, and was selected to the NY Times summer reading list.  Additionally, the Smith Book received excellent

reviews from purchasers on Goodreads, internationally across Amazon's websites, and Barnes and Noble.

34.     A French Edition of the Smith Book was contracted due to the success of the Smith Book in the U.S.  The French edition of the Smith Book was released roughly 16 months following the release of the U.S. edition.

35.     Since beginning in 2006, Ms. Smith has been a key member and proponent of the fairy house and fairy lore community.  During this time, Ms. Smith's passion for fairy houses and fairy lore has helped establish awareness, desire, and demand for this genre of products.

36.     Ms. Smith depends on her art to earn a living, and depends on copyright protection to prevent unethical business interests from profiting from her hard work and creativity.

37.     Ms. Smith produces her fairy houses one at a time in painstaking detail, with some houses taking months to complete, and has not licensed or granted permission to any of the Defendants to produce, distribute, or sell any of the copyrighted works.

**The Sunflower House**

38.      On or around May 24, 2015, Sally Smith constructed a fairy house sculpture featuring a tower design white birch bark exterior, upside-down sunflower with distinct twisted stem finial as a roof, exposed twig beams and rafters supporting the roof, a matching smaller sunflower with twisted stem finial as the porch awning, a sunflower trimmed porthole window on the front door, and a

porthole window with distinctive mullions made out of twigs forming a "V" shape (the "Sunflower House").

39.     The Sunflower House is one of Ms. Smith's most noted works. Photographs of the Sunflower House were included in Ms. Smith's blog on June 8, 2015 in great detail, in Ms. Smith's 2017 and 2018 calendars, and as part of the Smith Book, the copyright for which has been registered with the U.S. Copyright Office, where it appears on pages 129, 144, and 149.  Photographs of the Sunflower House were also featured in "The Faerie Handbook" by Carolyn Turgeon, as part of a Epoch Times article in 2017, an online article featured on the Better Homes and Gardens website, and as a cover image in a Watertown Daily Times article featuring Ms. Smith's work.

40.     Unauthorized copies of the Sunflower House, an example of which is shown above on the right, have been mass produced and appear for sale by various retailers and online sellers.  The unauthorized copies of the Sunflower House are strikingly similar to Ms. Smith's original work and include the same white birch bark round tower design, a sunflower roof and matching sunflower porch awning both with twisted stem finials, the "V" style mullions in the porthole windows, and the sunflower border to the porthole window located on the door.

**Ms. Smith's Sunflower House**       **Unauthorized Copy**



41.     Defendant Amazon advertised for sale, sold, and shipped unauthorized copies of the Sunflower House through its online marketplace.

42.     Defendants Wayfair, Zulily, Fairy Homes and Gardens, Oak Valley, and Overstock advertised for sale, sold, and shipped unauthorized copies of the Sunflower House through their respective websites.

43.     Defendant Hayneedle advertised for sale, sold, and shipped unauthorized copies of the Sunflower House from its website and through Walmart's online retail store.

44.     Upon information and belief, defendant Exhart has manufactured and/or distributed unauthorized copies of the Sunflower House to multiple sellers including Hayneedle, Wayfair, and Zulily.

45.     Upon information and belief, defendant Hi-Line has manufactured and/or distributed unauthorized copies of the Sunflower House to multiple sellers including Amazon, Oak Valley Trading, and Wayfair.

46.     Upon information and belief, defendant GiftCraft has manufactured and/or distributed unauthorized copies of the Sunflower House to multiple sellers.

**The Greenleaf Cottage**

47.     On or around July 31, 2013, Sally Smith constructed a fairy house sculpture featuring a distinctively coned twig-framed roof made with overlapping green leaves, a poppy pod imitating a light over the wood framed door, distinctive almond-oval shaped latticed windows on either side of the door, and pebbles accenting the base of the house and front steps (the "Greenleaf Cottage").

48.     Photographs of the Greenleaf Cottage were included in Ms. Smith's blog on August 28, 2013, in Ms. Smith's 2014 and 2018 calendars, individual elements of the Greenleaf Cottage were featured in the Smith Book on pages 55 and 74, and the work is registered with the Copyright Office under Reg. No. VA 2-170-505.

49.     Unauthorized copies of the Greenleaf Cottage, an example of which is shown above on the right, have been mass produced and appear for sale by various retailers and online marketplaces.  The unauthorized copies are strikingly similar to Ms. Smith's original creation and include the same distinctive coned roof made of overlapping green leaves, the same latticed almond-oval shaped windows on either side of the door, the same poppy pod light above door, and the same pebble foundation and pebble pattern flanking the front steps.

**Ms. Smith's Greenleaf Cottage**      **Unauthorized Copy**



50.      Defendant Hayneedle advertised for sale, sold, and shipped unauthorized copies of the Greenleaf Cottage through its own website and online through Walmart.

51.      Defendant Jet.com advertised for sale, sold, and shipped unauthorized copies of the Greenleaf Cottage through its website.

52.      Upon information and belief, defendant Exhart has manufactured and distributed unauthorized copies of the Greenleaf Cottage to multiple sellers including Hayneedle and Jet.com.

**The Hosta Treehouse**

53.      On or around August 23, 2015 Sally Smith constructed a fairy house sculpture featuring an overlapping green leaf roof, upside down flowers hung from the eaves of the roof, door with ornamental faux metal hinges and a distinctive twig frame surround with a small, round porthole window centered above the arched door, large single pebble acting as a front step, round porthole windows on either

side of the center door with twig mullions, thick moss at the base of the house, and twig accents embedded in the walls (the "Hosta Treehouse").

54.     Photographs of the Hosta Treehouse were included in Ms. Smith's blog on September 24, 2015 in great detail, in Ms. Smith's 2017 calendar, and as part of the Smith Book, the copyright for which has been registered with the U.S. Copyright Office, where it appears on page 22.

55.     Unauthorized copies of the Hosta Treehouse, an example of which is shown above on the right, have been mass produced and appear for sale by various retailers and online marketplaces.  The unauthorized copies are strikingly similar to Ms. Smith's original creation and include the same distinctive overlapping green leaf roof, upside down flowers hung from the eaves of the roof, an identical door design featuring the same ornamental faux metal hinges and twig trim surrounding a single porthole window, twig-mullioned porthole windows flanking the central door, and a single stone doorstep.

**Ms. Smith's Hosta Treehouse**        **Unauthorized Copy**



56.     Defendant Zulily advertised for sale, sold, and shipped unauthorized copies of the Hosta Treehouse through its website.

57.     Defendant My Fairy Gardens advertised for sale, sold, and shipped unauthorized copies of the Hosta Treehouse through online marketplace eBay Inc. ("eBay").

58.     Upon information and belief, defendant Exhart has manufactured and distributed unauthorized copies of the Hosta Treehouse to sellers including Zulily.

59.     Upon information and belief, defendant Gerson has manufactured and/or distributed unauthorized copies of the Hosta Treehouse.

**The Pinelake Cottage**

60.     On or around July 31, 2015, Sally Smith constructed a fairy house sculpture featuring a twig threshold below a peaked door with a pronounced knob on the right side of the door, ornamental arched surround made from twigs flanking the door, latticed circular porthole windows, and a gull-wing roof made from mossy bark incorporating a tiered overlap (the "Pinelake Cottage").

61.     Photographs of the Pinelake Cottage were included in Ms. Smith's blog on August 9, 2015, in Ms. Smith's 2017 calendar, as part of the Smith Book, the copyright for which has been registered with the U.S. Copyright Office, where the prominent features appear on page 55, and the work is registered with the Copyright Office under Reg. No. VA 2-170-506.

62.     Unauthorized copies of the Pinelake Cottage, an example of which is shown above on the right, have been mass produced and appear for sale by various

retailers and online marketplaces.  The unauthorized copies are strikingly similar to Ms. Smith's original creation and include an identical entryway, door, roof, and window design.

| Ms. Smith's Pinelake Cottage | Unauthorized Copy |
| --- | --- |
|  |  |

63.   Defendant My Fairy Gardens advertised for sale, sold, and shipped unauthorized copies of the Pinelake Cottage through online marketplace eBay.

64.   Defendant Wayfair advertised for sale, sold, and shipped unauthorized copies of the Pinelake Cottage through its website.

65.   Upon information and belief, defendant Exhart has manufactured and distributed unauthorized copies of the Pinelake Cottage to sellers including Wayfair.

66.   Upon information and belief, defendant Hi-Line has manufactured and/or distributed unauthorized copies of the Pinelake Cottage to multiple sellers.

**The Lily-Topped Cottage**

67.   On or around July 30, 2013, Sally Smith constructed a fairy house

sculpture featuring a roof composed of an upside down lily blossom with the stem of the lily as the finial, latticed windows on either side of the door with a pronounced oval frame, a poppy pod acting as a light above the round-arched door, and a pebbled base with two steps composed of single stones (the "Lily-Topped Cottage").

68.     Photographs of the Lily-Topped Cottage were included in Ms. Smith's blog on July 30, 2013, in Ms. Smith's 2015 calendar, and the work is registered with Copyright Office under Reg. No. VA 2-172-428.

69.     Unauthorized copies of the Lily-Topped Cottage, an example of which is shown above on the right, have been mass produced and appear for sale by various retailers and online marketplaces.  The unauthorized copies are strikingly similar to Ms. Smith's original creation and include an identical green stem finial on the lily blossom roof, door design, and imitation poppy pod light above the door as well as the distinctive latticed oval windows on either side of the central door.

**Ms. Smith's Lily-Topped Cottage**          **Unauthorized Copy**

 

70.     Defendant Wayfair advertised for sale, sold, and shipped unauthorized

copies of the Lily-Topped Cottage through its website.

71.     Defendant My Fairy Gardens advertised for sale, sold, and shipped unauthorized copies of the Lily-Topped Cottage through its website and online marketplaces Etsy, Inc. ("Etsy") and eBay.

72.     Upon information and belief, defendant Exhart has manufactured and distributed unauthorized copies of the Lily-Topped Cottage to sellers including Wayfair.

**The Golden Birch House**

73.     On or around September 14, 2011 Sally Smith constructed a fairy house sculpture featuring a multi-turreted tower house with acorn and goldenrod burl finials adorning each conically peaked roof made from pinecone scales, leaf hinges on the right side of the twig-trimmed arched door, a distinctive porthole window directly above the door, with additional porthole windows on the sides of the house and tower, a tree-fungus awning above the door, and tree-fungus steps nestled in a root base (the "Golden Birch House").

74.     Photographs of the Golden Birch House were included in Ms. Smith's blog on October 4, 2012, in Ms. Smith's 2014, 2015, and 2018 calendars, and as part of the Smith Book, the copyright for which has been registered with the U.S. Copyright Office, where it appears on pages 79 and 130.

75.     Unauthorized copies of the Golden Birch House, an example of which is shown above on the right, have been mass produced and appear for sale by various retailers and online marketplaces.  The unauthorized copies are strikingly similar

to Ms. Smith's original creation and include identical pine cone scale roofs with acorn and imitation goldenrod burl finials, tree-fungus awning and steps, and the unique towers and roofline of Ms. Smith's original work.

**Ms. Smith's Golden Birch House**          **Unauthorized Copy**

     

76.     Defendants Hayneedle and BHG advertised for sale, sold, and shipped unauthorized copies of the Golden Birch House through their respective websites and Walmart.

77.     Defendants Wayfair and Jet.com advertised for sale, sold, and shipped unauthorized copies of the Golden Birch House through their respective websites.

78.     Upon information and belief, defendant Exhart has manufactured and distributed unauthorized copies of the Golden Birch House to sellers including Wayfair, BHG, Hayneedle, and Jet.com.

**Cedar Fern Lodge**

79.     On or around September 14, 2011, Sally Smith constructed a fairy house sculpture featuring a steeply peaked fern roof with triangular twin dormers

and windows in each, three flat slate-style steps incorporated into a pebble-stone foundation, thick birch upright Y-shaped branches flanking each side of a twig framed door, and intricate light twig design applied to the dark brown door (the "Cedar Fern Lodge").

80.   Photographs of the Cedar Fern Lodge were included in Ms. Smith's blog on August 16, 2014 and in 2016, in Ms. Smith's 2016 and 2017 calendars, and as part of the Smith Book, the copyright for which has been registered with the U.S. Copyright Office, where it appears on page 157.

81.   Unauthorized copies of the Cedar Fern Lodge, an example of which is shown above on the right, have been mass produced and appear for sale by various retailers and online marketplaces.  The unauthorized copies are strikingly similar to Ms. Smith's original creation and include the distinctive steeply pitched and layered fern roof, triangular twin dormers and windows, the unique twig overlay on the front door, the thick Y-shaped upright branches framing the door, and 3 stone steps blending into the pebble foundation surrounding the house.

**Ms. Smith's Cedar Fern Lodge**          **Unauthorized Copy**




{B1975803.4 13337-0003}

82.     Upon information and belief, defendant Exhart has manufactured and distributed unauthorized copies of the Cedar Fern Lodge.

**Maidenhair Cottage**

83.     On or around November 27, 2012, Sally Smith constructed a fairy house sculpture featuring twig-trimmed peaked French style double doors, mossy roofs over the bay window bump-outs, a green leafy roof with flared edges supported by twig rafters exposed at the edges, and a large poppy pod finial with distinctive leaf petals supporting the finial (the "Maidenhair Cottage").

84.     Photographs of the Maidenhair Cottage were included in Ms. Smith's blog on November, 28, 2018 in great detail, in Ms. Smith's 2013 and 2016 calendars, in the "Fairy Homes & Gardens" book by Barbara Purchia and E. Ashley Rooney, and as part of the Smith Book, the copyright for which has been registered with the U.S. Copyright Office, where it appears on page 6 and 131.

85.     Unauthorized copies of the Maidenhair Cottage, an example of which is shown above on the right, have been mass produced and appear for sale by various retailers and online marketplaces.  The unauthorized copies are strikingly similar to Ms. Smith's original creation and include the distinct roof design featuring a round seed pod finial nested in the roof leaves, French style double entry doors, and mossy roofs over the bay window bump-outs.

**Ms. Smith's Maidenhair Cottage**          **Unauthorized Copy**

 

86.     Defendants Walmart, Zulily, Oak Valley, and Overstock advertised for sale, sold, and shipped unauthorized copies of the Maidenhair Cottage through their respective websites.

87.     Defendant Hayneedle advertised for sale, sold, and shipped unauthorized copies of the Maidenhair Cottage through its own website and Walmart.

88.     Defendant Wayfair advertised for sale, sold, and shipped unauthorized copies of the Maidenhair Cottage through its own website and eBay.

89.     Upon information and belief, defendant Hi-Line has manufactured and distributed unauthorized copies of the Maidenhair Cottage to sellers including Hayneedle, Oak Valley Trading, Walmart, and Wayfair.

90.     Upon information and belief, defendant Exhart has manufactured and distributed unauthorized copies of the Maidenhair Cottage to sellers including Fairy Homes and Gardens and Wayfair.

91.    Upon information and belief, defendant Gerson has manufactured and/or distributed unauthorized copies of the Maidenhair Cottage to multiple sellers, including Wayfair.

**Dragon Castle**

92.    On or around November 3, 2011, Sally Smith constructed a fairy house sculpture featuring a castle design with multiple, poppy pod finial topped towers made from distinctive bark roofs, one of which is covered in ivy, porthole windows, and bump-out featuring a distinctive twig-mullioned window with arched roof (the "Dragon Castle").

93.    Photographs of the Dragon Castle were included in Ms. Smith's blog on November 5, 2011 and in 2013, in Ms. Smith's 2014 and 2015 calendar, in the "Fairy Homes & Gardens" book by Barbara Purchia and E. Ashley Rooney, as part of a PBS television special in 2015, as part of a Epoch Times article in 2017, and as part the Smith Book, the copyright for which has been registered with the U.S. Copyright Office, where it appears as the cover image and on page 52.

94.    Unauthorized copies of the Dragon Castle, an example of which is shown above on the right, have been mass produced and appear for sale by various retailers and online marketplaces.  The unauthorized copies are strikingly similar to Ms. Smith's original creation and include the same multi-tower design with distinctive birch roofs and poppy pod finials, arched roofed bump out features with twig-mullioned windows, additional porthole windows, and ivy accents among the towers.

**Ms. Smith's Dragon Castle**          **Unauthorized Copy**

          

95.    Defendants Amazon, Walmart, and Oak Valley advertised for sale, sold, and shipped unauthorized copies of the Dragon Castle through their respective websites.

96.    Defendant My Fairy Gardens advertised for sale, sold, and shipped unauthorized copies of the Dragon Castle through its own website, Etsy, and eBay.

97.    Defendant Hayneedle advertised for sale, sold, and shipped unauthorized copies of the Dragon Castle through eBay and Walmart.

98.    Defendant Wayfair advertised for sale, sold, and shipped unauthorized copies of the Dragon Castle through its own website and eBay.

99.    Upon information and belief, defendant Hi-Line has manufactured and distributed unauthorized copies of the Dragon Castle to sellers including Amazon, My Fairy Garden, Hayneedle, Oak Valley Trading, Walmart, and Wayfair.

**Cypress Treehouse**

100.    On or around April 30, 2015, Sally Smith constructed a fairy house

sculpture featuring shelf-mushroom steps, uniquely curved pine cone scale roof, with a double goldenrod burl finial, twig mullion round windows, arched door with curved awning, and a porthole window isolated by a dividing curved roofline (the "Cypress Treehouse").

101.    Photographs of the Cypress Treehouse were included in Ms. Smith's blog on May 1, 2015 and May 4, 2015, in Ms. Smith's 2016 and 2017 calendar, and as part of the Smith Book, the copyright for which has been registered with the U.S. Copyright Office, where it appears pages 36 and 111.

102.    Unauthorized copies of the Cypress Treehouse, an example of which is shown above on the right, have been mass produced and appear for sale by various retailers and online marketplaces.  The unauthorized copies are strikingly similar to Ms. Smith's original creation and include the same shelf-mushroom steps and patios leading to the arched front door with curved awning, pine cone scale roof topped with distinctive double goldenrod burl, multiple twig-mullioned round windows, and porthole window isolated by a dividing curved roofline.

**Ms. Smith's Cypress Treehouse**         **Unauthorized Copy**




103.    Defendants Jet.com and BHG advertised for sale, sold, and shipped unauthorized copies of the Cypress Treehouse through their respective websites.

104.    Defendant Hayneedle advertised for sale, sold, and shipped unauthorized copies of the Cypress Treehouse through its own website and Walmart.

105.    Defendant My Fairy Gardens advertised for sale, sold, and shipped unauthorized copies of the Cypress Treehouse through its own website, eBay, and Etsy.

106.    Upon information and belief, defendant Exhart has manufactured and distributed unauthorized copies of the Cypress Treehouse to sellers including BHG, Hayneedle, My Fairy Gardens, and Jet.com.

**Brown Treehouse**

107.    On or around September 1, 2009, Sally Smith constructed a fairy house sculpture featuring a white shelf-mushroom front patio area and steps, 2 shield shaped contrasting window frames on the birch bark round tower house, latticed windows with tree fungus awnings, arched door with a single, round porthole window, and rounded tree fungus shingles making up the roof (the "Brown Treehouse").

108.    Photographs of the Brown Treehouse were included in Ms. Smith's blog on September 7, 2009 and in 2010, in Ms. Smith's 2012 calendar, and the work is registered with the United States Copyright Office as VA 2-136-218.

109.    Unauthorized copies of the Brown Treehouse, an example of which is

shown above on the right, have been mass produced and appear for sale by various retailers and online marketplaces.  The unauthorized copies are strikingly similar to Ms. Smith's original creation and include the same single birch bark body tower design topped by a conical shingled roof, a shelf-fungus front patio area, and shield shaped window frames featuring latticed windows, central arched door with porthole window, and decorative awnings over the door and windows.

| Ms. Smith's Brown Treehouse | Unauthorized Copy |
| :---: | :---: |
|  |  |

110. Defendant Zulily advertised for sale, sold, and shipped unauthorized copies of the Brown Treehouse through its own website.

111. Upon information and belief, defendant Exhart has manufactured and distributed unauthorized copies of the Brown Treehouse to sellers including Zulily and various eBay sellers.

112. Upon information and belief, defendant Gerson has manufactured and/or distributed unauthorized copies of the Brown Treehouse.

## CAUSES OF ACTION

## Count I – Direct Infringement

113.    Ms. Smith incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

114.    Defendants are making, distributing, or causing to be made or distributed unauthorized reproductions and derivative works of Plaintiff's copyrighted works in violation of 17 U.S.C. §§ 106(1)-(3) and 501, including the specific works enumerated herein.

115.    Defendants do not have any license, authorization, permission, or consent to use Plaintiff's copyrighted works.

116.    Defendants' acts of infringements have been willful, intentional, and purposeful, in disregard of and indifferent to Plaintiff's rights.

117.    As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to maximum statutory damages in the amount of $150,000 for each work infringed from each Defendant, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's election, Plaintiff shall be entitled to her actual damages, including the Defendants' profits from infringement, pursuant to 17 U.S.C. § 504(b).

118.    Plaintiff is further entitled to her attorney's fees and full costs pursuant to 17 U.S.C. § 505.

119.    Defendants' infringement has caused and is causing irreparable harm

to Ms. Smith for which she has no adequate remedy at law.  Unless this Court restrains Defendants from infringing Ms. Smith's protected work, the harm will continue to occur in the future.  Accordingly, Ms. Smith is entitled to a preliminary and permanent injunction prohibiting further infringements of her copyrights and exclusive rights under copyright.

<u>**Count II – Contributory Copyright Infringement**</u>

120.    Ms. Smith incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

121.    Copyrighted works owned by Plaintiff, and derivative works thereof, have been and continue to be illegally reproduced and distributed without authorization on Defendants Amazon's and Walmart's, (the "Marketplace Defendants") websites in violation of 17 U.S.C. § 501.

122.    The Marketplace Defendants are secondarily liable under the Copyright Act for such infringing acts as contributory infringers.  The Marketplace Defendants have actual and constructive knowledge of the infringing activity that occurs on and through the use of their websites.  Through the creation, maintenance, and operation of the sites and facilities for infringement, the Marketplace Defendants knowingly cause or otherwise materially contribute to the unlawful reproduction and distribution of Plaintiff's copyrighted works and derivative works thereof in violation of Plaintiff's exclusive rights under the Copyright Act.

123.    The acts of the Marketplace Defendants have been willful, intentional,

and purposeful, in disregard of and indifferent to Plaintiff's rights.

124.    As a direct and proximate result of the Marketplace Defendants'
contributory infringement of Plaintiff's copyrights and exclusive rights under
copyright, Plaintiff is entitled to maximum statutory damages in the amount of
$150,000 for each work infringed from each Marketplace Defendant, or such other
amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's
election, Plaintiff shall be entitled to her actual damages, including the Marketplace
Defendants' profits from infringement, pursuant to 17 U.S.C. § 504(b).

125.    Plaintiff is further entitled to her attorney's fees and full costs
pursuant to 17 U.S.C. § 505.

126.    The Marketplace Defendants' contributory infringement has caused
and is causing irreparable harm to Ms. Smith for which she has no adequate
remedy at law.  Unless this Court restrains the Marketplace Defendants from
infringing Ms. Smith's protected work, the harm will continue to occur in the future.
Accordingly, Ms. Smith is entitled to a preliminary and permanent injunction
prohibiting further infringements of her copyrights and exclusive rights under
copyright.

## Count III – Vicarious Copyright Infringement

127.    Ms. Smith incorporates by reference the allegations set forth in the
preceding paragraphs as if fully set forth herein.

128.    Copyrighted works owned by Plaintiff, and derivative works thereof,
have been and continue to be illegally reproduced and distributed without

authorization on the Marketplace Defendants' websites in violation of 17 U.S.C. § 501.

129.   The Marketplace Defendants are vicariously liable for such infringing acts.  The Marketplace Defendants have the right and ability to supervise and control the infringing activities that occur through the use of their websites, and at all relevant times have derived a direct financial benefit attributable to the infringement through those sites.  Defendants are therefore vicariously liable for the unlawful reproduction and distribution of Plaintiff's copyrighted works and derivative works thereof in violation of Plaintiff's exclusive rights under the copyright laws of the United States.  *See* 17 U.S.C. § 106.

130.   The acts of the Marketplace Defendants have been willful, intentional, and purposeful, in disregard of and indifferent to Plaintiff's rights.

131.   As a direct and proximate result of the Marketplace Defendants' vicarious infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to maximum statutory damages in the amount of $150,000 for each work infringed from each Marketplace Defendant, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Plaintiff's election, Plaintiff shall be entitled to her actual damages, including the Marketplace Defendants' profits from infringement, pursuant to 17 U.S.C. § 504(b).

132.   Plaintiff is further entitled to her attorney's fees and full costs pursuant to 17 U.S.C. § 505.

133.   The Marketplace Defendants' vicarious infringement has caused and is

causing irreparable harm to Ms. Smith for which she has no adequate remedy at law.  Unless this Court restrains the Marketplace Defendants from infringing Ms. Smith's protected work, the harm will continue to occur in the future.  Accordingly, Ms. Smith is entitled to a preliminary and permanent injunction prohibiting further infringements of her copyrights and exclusive rights under copyright.

## PRAYER FOR RELIEF

Plaintiff demands judgment in her favor against Defendants, and each Defendant, as follows:

a.   That Defendants' products and materials that infringe Ms. Smith's copyrights be impounded pursuant to 17 U.S.C. § 503(a);

b.   That Defendants' products and materials that infringe Ms. Smith's copyrights be destroyed pursuant to 17 U.S.C. § 503(b);

c.   That Defendants be required to provide a full accounting to Ms. Smith for all profits derived from their use of Ms. Smith's copyrighted works and Defendants' production, reproduction, preparation, and distribution of derivative works based on them worldwide;

d.   That Defendants be ordered to pay to Ms. Smith all damages, including future damages, that Ms. Smith has sustained or will sustain as a result of the acts complained of herein, and that Ms. Smith be awarded any profits derived by Defendants as a result of said acts, or as determined by an accounting ordered by the Court;

e.   That Defendants be ordered to pay to Ms. Smith statutory damages pursuant

to 17 U.S.C. § 504(c).

f.  That Defendants be ordered to pay to Ms. Smith prejudgment and

postjudgment interest on all damages;

g.  That Defendants be ordered to pay to Ms. Smith full costs and attorney's fees

pursuant to 17 U.S.C. § 505.

h.  That Defendants, along with their agents, partners, licensees, divisions,

affiliates, parent corporations, and all others in active concert or participation

with any of them, be permanently enjoined from producing, manufacturing,

displaying, distributing, or selling any product infringing on the copyrighted

works enumerated herein; and

i.  That the Court award such other or further relief as the Court may deem

proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all counts so triable.

Dated at Burlington, Vermont this 27th day of November, 2019.

By _____

Shapleigh Smith, Jr., Esq.
DINSE
209 Battery Street
Burlington, VT  05401
802-864-5751
ssmith@dinse.com
jbarnard@dinse.com

*Counsel for Plaintiff*